UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SCOTTSDALE INSURANCE COMPANY,

                Plaintiff(s),

vs

ZEPHYR CONSTRUCTION MANAGEMENT, LLC

                Defendant(s)

COMPLAINT FOR DECLARATORY JUDGMENT

Civil Action No.:_____

      Plaintiff SCOTTSDALE INSURANCE COMPANY ("Scottsdale") by its attorneys, Goldberg Segalla LLP, for its complaint herein, alleges, upon information and belief, as follows:

      1.    This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 et. seq. and Rule 57 of the Federal Rules of Civil Procedure.

## THE PARTIES

      2.    Scottsdale is a corporation existing under the laws of Ohio, with its principal place of business in Scottsdale, Arizona, which is duly authorized to engage in the business of selling insurance in the State of New York.

      3.    Upon information and belief, ZEPHYR CONSTRUCTION MANAGEMENT, LLC ("Zephyr"), is a domestic corporation duly organized and existing under the laws of the State of New York, maintaining its offices in the State of New York.

## JURISDICTION AND VENUE

      4.    This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 in that it is a civil action between parties of different states, and the matter in controversy

exceeds the sum or value of $75,000.00, exclusive of interests and costs.

5. Venue in this district is proper under 28 U.S.C. paragraph 1391(b)(2), since a substantial part of the events giving rise to the claim occurred in this judicial district, and the defendant maintains a principal office for the transaction of business in this judicial district.

## FACTS

6. Zephyr applied for a policy of insurance with Scottsdale by way of a Commercial Insurance Application dated August 25, 2014 (the "initial application"). A true and accurate copy of the initial application is attached hereto as **Exhibit A**.

7. The application required Zephyr to describe its primary operations to which Zephyr replied "Carpentry." Exhibit A, page 2 of 4.

8. The application asks whether any structural alterations as part of Zephyr's operations are contemplated to which Zephyr responded in the negative. Exhibit A, page 3 of 4.

9. The application asks whether any demolition exposure is contemplated to which Zephyr indicated no. Exhibit A, page 3 of 4.

10. The application contains a fraud warning, applicable in New York, which reads as follows:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime, and shall be subject to civil penalties… (In New York, the civil penalty is not to exceed five thousand ($5,000) and the stated value of the claim for each such violation.

Exhibit A, page 4 of 4.

11. The application is signed by Mr. Joseph Aiello. Exhibit A, page 4 of 4.

12. Zephyr also completed an Artisan Contractors Supplemental Application in which it disclosed that it was solely engaged in carpentry. A true and accurate copy of the Artisan Contractors Supplemental Application, also signed by Joseph Aiello, is attached hereto as **Exhibit B.** Exhibit B, page 1 of 4.

13. On the Artisan Contractors Supplemental Application, Zephyr was asked whether any past or current operations were performed on new condominiums or townhouses, to which Zephyr responded, "No." Exhibit B, Artisan Contractors Supplemental Application, page 2 of 6.

14. On the Artisan Contractors Supplemental Application, Zephyr was asked the percentage of operations related to foundation construction and/or foundation repair, to which Zephyr replied "N/A." Exhibit B, Artisan Contractors Supplemental Application page 2 of 6.

15. The supplemental portion of the initial application requires that the applicant state the total payroll of the company, which is filled in at $100,000 and the "Receipts/Sales," which Zephyr listed at $1,200,000 for the current year. Exhibit B, Artisan Contractors Supplemental Application page 2 of 6.

16. In the supplemental portion of the initial application, the "Operation" is listed by Zephyr as 100% Artisan Contractor, and the type of work is listed as 20% "Residential/Remodeling" and 80% "Commercial." The initial application shows that Zephyr engages in 0% condos/townhouses. Exhibit B, Artisan Contractors Supplemental Application page 2 of 6.

17. The supplemental portion of the initial application asks if there is "Any work performed above two stories in height from grade?" to which Zephyr checked the box titled "No." Exhibit B, Artisan Contractors Supplemental Application page 3 of 6.

18. The supplemental portion of the initial application asked if Zephyr was a

construction/project manager or consultant, to which Zephyr responded, "No." Exhibit B, Artisan Contractors Supplemental Application, page 3 of 6.

19. The supplemental portion of the initial application contains a fraud provision which reads:

> NOTICE TO NEW YORK APPLICANTS (Other than automobile): Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

See Exhibit B, page 6 of 64.

20. Based on the representations made in the initial application, Scottsdale issued a policy of insurance, policy number CPS2042393 ("the Policy"), to Zephyr as the named insured for a specified premium. A true and accurate copy of the initial policy is attached as **Exhibit C** hereto.

21. The Policy provided Commercial General Liability insurance on an occurrence basis, with an effective policy period of August 25, 2014 to August 25, 2015. Exhibit C.

22. The policy contains the following relevant Condition:

> 6. Representations
>
>    By accepting this policy, you agree:
>    a. The statements in the Declarations are accurate and complete;
>    b. Those statements are based upon representations you made to us; and
>    c. We have issued this policy in reliance upon your representations.

Exhibit C, page 12 of 16.

23. In or about August 2019, Zephyr's insurance broker tendered a lawsuit to Scottsdale

styled *Anthony Piliaskas v. 26 West Street LLC, Galaxy Developers LLC, Simon Dushinsky, David Dushinsky, Zephry Construction Management, LLC, Joseph Kohler, Joseph Aiello, and Stroh Engineering Services, P.C.,* which had been commenced in or about October 2015 in the Supreme Court of the State of New York, Kings County, under Index No. 12182/2015 ("the *Piliaskas Lawsuit*"). A copy of the Summons and Complaint in the *Piliaskas* Lawsuit is annexed hereto as **Exhibit D.**

24. In the *Piliaskas* Lawsuit, plaintiff alleges that he sustained property damage to his real property due to defendants' demolition, excavation, and construction activities.

25. Specifically, Mr. Piliaskas claims that the demolition, excavation and construction activity at a project located at 26 West Street, Brooklyn, NY ("the Project") caused property damage to plaintiff's adjacent property located at 64 Oak St. Brooklyn, NY and continues to cause damage and threatens the structural integrity of his property. After being notified of the accident and the Underlying Action, Scottsdale began its claim investigation.

26. Upon information and belief, the Project involved construction of a seven-story, 100-unit apartment building in Brooklyn, New York. In the *Piliaskas* Lawsuit, plaintiff has asserted four causes of action: in the first cause of action, plaintiff seeks a permanent injunction enjoining defendants from engaging in any further construction activities at the Project; the second cause of action seeks a declaration that defendants may not perform demolition or construction work at the Project; the third cause of action alleges that defendants' construction activities have damaged plaintiff's foundation, causing monetary damages of not less than $1,000,000; and the fourth cause of action alleges trespass onto plaintiff's property.

27. In addition to declaratory and injunctive relief, the complaint in the *Piliaskas* Lawsuit seeks both compensatory and punitive damages.

28. By letter dated October 23, 2019, Scottsdale agreed to afford a defense to Zephyr in the *Piliaskas* Lawsuit subject to a Reservation of Rights. A copy of the October 23, 2019 letter is annexed as **Exhibit E.**

29. On or about February 7, 2020, Scottsdale received a copy of an Affidavit that had been filed in connection with the *Piliaskas* Lawsuit and executed by Zephyr's principal, Joseph Aiello. A copy of the Affidavit is annexed as **Exhibit F.**

30. In the Affidavit, Mr. Aiello states that Zephyr was hired by 26 West Street LLC as construction manager to oversee the construction of a new building. See Exhibit F, page 1, Para. 1.

31. Mr. Aiello also states that the construction project involved demolition of an existing building and construction of "96 apartments divided across 87,963 square feet" along with "48 parking spots and bike storage on the ground floor, a 500-square-foot recreation room on the third floor, and an 1100-square-foot roof deck." The Subcontract price was $800,000. The Subcontract's scope of work section indicates that Zephyr was required to furnish and install the metal decks, metal stairs and railings, safety cables, pit ladder and guard railings needed throughout the building. See Exhibit F, page 3 at Para. 6.

32. Prior to February 7, 2020, Scottsdale had no knowledge that Zephyr was involved in construction management rather than interior carpentry as disclosed on the application for the Policy.

33. Accordingly, in completing the insurance application, Zephyr misrepresented many material facts related to the nature of the work it performed.

34. As discussed above, the applications submitted in connection with the Scottsdale Policy stated that Zephyr's "primary operations" consisted of carpentry. Zephyr did not disclose

6

that it was, in fact, involved primarily in construction management.

35. Zephyr also expressly misrepresented the fact that it was involved in construction project involving building exceeding two stories from grade, and Scottsdale had no reason to assume such work was being performed since Zephyr indicated on its applications that no work was performed above two stories high.

36. The misrepresentations and/or omissions of fact in Zephyr's applications were material to Scottsdale's agreement to issue the initial commercial general liability and its calculation of the appropriate amount of premium to be charged.

37. If the application contained correct information, Scottsdale would not have issued the initial or renewal policy.

38. Scottsdale has advised Zephyr of its rescission of the renewal policy *ab initio* based upon the misrepresentations in the application and is in the process of returning all premiums paid to Zephyr. A true and accurate copy of the letter rescinding the policy is attached hereto as **Exhibit G.**

## COUNT I

### (Rescission as against Zephyr)

39. Scottsdale repeats and realleges paragraphs 1-38 as if stated more fully in this paragraph 39.

40. In completing the initial application, Zephyr misrepresented facts about the nature of its business, the type of work performed, the height at which work is performed and the amount of sales it anticipated during the policy period.

41. Based upon and in reliance on the information contained in the applications, the commercial general liability policy was issued to Zephyr on behalf of Scottsdale.

42. If the applications contained correct information, Scottsdale would not have issued the policy.

43. Scottsdale has advised Zephyr of its rescission of the policy *ab initio* based upon the misrepresentations in the applications.

44. Moreover, Scottsdale has returned to Zephyr the premiums paid by it which are attributable to Policy No. CPS2042393.

45. Scottsdale is entitled to a declaration that the policy is void *ab initio* based upon the material misrepresentations in the applications pursuant to New York Insurance Law §3105.

## COUNT II

### (Declaratory Judgment as against Zephyr)

46. Scottsdale repeats and realleges paragraphs 1-45 as if stated more fully in this paragraph 46.

47. Even if the Policy was not rescinded based on Zephyr's material misrepresentations, there would be no coverage for Zephyr for the Underlying Action.

48. The Policy only provides coverage for bodily injury or property damage arising out of an occurrence.

49. The Policy states, in part:

> **This insurance applies to "bodily injury" and "property damage" only if:**
>
> **(1) The "bodily injury" or "property damage" is caused by an "occurrence"**
>
> …
>
> **SECTION V – DEFINITIONS**
>
> **3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from**

>    any of these at any time.
>
> …
>
> **13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.**
>
> …
>
> **17.    "Property damage" means:**
>
>    **a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or**
>
>    **b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.**

…

50.    Scottsdale is entitled to a declaration that it owes no coverage to Zephyr with regard to the *Piliaskas* Lawsuit.

51.    The complaint in the *Piliaskas* Lawsuit seeks a declaratory judgment, a permanent injunction enjoining any further construction activity, and alleges trespass.

52.    The Policy only provides coverage for property damage as a result of an occurrence.

53.     The Policy provides in relevant part:

>    **This insurance applies to "bodily injury" and "property damage" only if:**
>
>    **(1)    The "bodily injury" or "property damage" is caused by an "occurrence"**
>
> …
>
>    **SECTION V – DEFINITIONS**
>
>    **13.    "Occurrence" means an accident, including continuous**

**or repeated exposure to substantially the same general harmful conditions.**

...

54. The *Piliaskas* Lawsuit does not allege an occurrence.

55. Therefore, any and all damages arising out of the *Piliaskas* Lawsuit fall outside the scope and terms of the Policy.

56. For this reasons, Scottsdale is entitled to a declaration that it has no obligation to defend or indemnify Zephyr with respect to the *Piliaskas* Lawsuit under the Policy.

## COUNT III

### (Declaratory Judgment as against Zephyr)

57. Scottsdale repeats and realleges paragraphs 1-56 as if stated more fully in this paragraph 57.

58. The policy also contains the following potentially relevant exclusions:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EARTH OR LAND MOVEMENT EXCLUSION - UTS-301g (11-05)**

**This policy does not apply to "bodily injury"/"bodily injury," "property damage"/"property damage," "personal and advertising injury" or damages/"damages" caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land, regardless of:**

1. **The cause or source of such earth or land movement; '**
2. **Whether such earth or land movement arises from natural or man-made forces or causes; or**
3. **Whether such earth or land movement occurs:**

   A. **Independently of;**
   B. **As a result of;**

10

>       C.      **In concurrence or connection; or**
>       D.      **In any sequence associated**
>
> **With any other natural or man-made forces, causes, events or operations.**
>
> **Earth or land movement includes, but is not limited to, subsidence, settling, sinking, rising, slipping, falling away, caving in, shifting, expanding, contracting, dis-solving, eroding, mudflow, sliding, tilting of land or earth, earthquakes, volcanic eruption and weather.**
>
> \* \* \*
>
> **UTS-74g (08-95)**
>
> **THIS ENDORSEMENT CHANGES THE POLICY.**
> **PLEASE READ IT CAREFULLY.**
>
> **PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION**
>
> **In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.**
>
> **Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.**
>
> **If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.**

59.     The Scottsdale policy contains an exclusion entitled, "Earth or Land Movement Exclusion", which provides that the Policy does not insure claims of property caused directly or

indirectly or in whole or in part, by the movement, in any direction, of earth or land. The exclusion applies regardless of the cause or source of the earth or land movement, whether from natural or man-made forces or causes.

60. The Earth or Land Movement Exclusion describes earth or land movement to include subsidence, settling, sinking, rising, slipping, falling away, caving in, shifting, expanding, contracting, dissolving, eroding, mudflow, sliding, tilting or land or earth, earthquakes, volcanic eruption and weather.

61. The underlying action claims earth or land movement at the property of underlying plaintiffs as a cause of their alleged property damage.

62. To the extent the underlying action alleges damages that arise out of earth or land movement, such damage is excluded by the "Earth or Land Movement Exclusion," and there is no coverage under the Scottsdale policy.

63. Scottsdale has no duty to pay damages or provide a defense in connection with any suit alleging property damage to which the Policy does not apply.

64. Accordingly, Scottsdale is entitled to a declaration that it has no duty to defend or indemnify Zephyr in connection with damage excluded under the "Earth or Land Movement Exclusion in the Scottsdale Policy.

65. Scottsdale further seeks an apportionment between covered and excluded damages based upon the Earth or Land Movement Exclusion.

## **COUNT IV**

**(Declaratory Judgment as against Zephyr)**

66. Scottsdale repeats and realleges paragraphs 1-65 as if stated more fully in this

paragraph 66.

67. In the *Piliaskas* Lawsuit, plaintiff seeks declaratory relief, injunctive relief, compensatory damages and punitive damages.

68. Declaratory relief and injunctive relief do not constitute damages within the contemplation of the Policy.

69. Punitive damages are expressly excluded from coverage based upon the applicability of the Punitive or Exemplary Damages Exclusion.

70. Moreover, insurance coverage for punitive damages is prohibited under New York law.

71. Accordingly, Scottsdale is entitled to a declaration that it has no obligation to indemnify Zephyr in connection with any declaratory relief, injunctive relief, or punitive damages which are granted to plaintiff in the *Piliaskas* Lawsuit.

72. Scottsdale further seeks an apportionment between covered and excluded damages based upon the foregoing.

**WHEREFORE**, Scottsdale demands judgment finding and declaring the rights of the parties as follows:

1. That the Policy numbered CPS2042923 is rescinded and void *ab initio*;

2. That in light of the rescission of the aforesaid policy, the Court finds and declares that Scottsdale has no duty or obligation to defend Zephyr in connection with the *Piliaskas* Lawsuit;

3. Inasmuch as Policy numbered CPS2042923 is rescinded *ab initio*, there is no duty to defend or indemnify Zephyr in connection with any past or future

        claims that may have accrued from August 25, 2014 to August 25, 2015.

4.     In the alternative, that Scottsdale owes no duty to defend or indemnify Zephyr in the *Piliaskas* Lawsuit based upon the applicability of the Earth or Land Movement Exclusion under Count II; or

5.     That Scottsdale be granted an apportionment between covered and excluded damages under Counts II, III and IV.

6.     That the court grant Scottsdale such other and further relief as it deems just and proper.

Dated:   Buffalo, New York                       Respectfully submitted,
        March 26, 2020

                                                  Goldberg Segalla LLP

                                                  By:   *s/Sharon Angelino*
                                                          Sharon Angelino, Esq.
                                                  *Attorneys For Plaintiff*
                                                  665 Main Street, Suite 400
                                                  Buffalo, NY 14203-1425
                                                  Phone: 716.566.5411
                                                  Fax:    716.566.5401